UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALDA MESON,

    Plaintiff,

v.                                                                                                 Case No: 05-70351
                                                                                               Hon. Victoria A. Roberts

CIT TECHNOLOGIES CORPORATION and
CIT GROUP, INC.

    Defendants.
_____/

**ORDER GRANTING IN PART, AND DENYING IN PART,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This matter is before the Court on Defendants' Motion for summary judgment. For the following reasons, the Court **GRANTS** it in part and **DENIES** it in part.

**II.  BACKGROUND**

This action arises out of the decision not to hire Plaintiff, Ronalda Meson. This decision followed the acquisition of the lease assets of GATX Technology Services Corporation ("GTS") by Defendants CIT Group Inc., and its subsidiary CIT Technologies Corporation (collectively "CIT"). The Plaintiff was an employee of GTS.

In April 2004, an agreement was reached for CIT to purchase some of the lease assets owned by GTS. At that time, GTS had three regional vice presidents ("RVP"):

Plaintiff, Michael Liebsch ("Liebsch") and Keith Olenek ("Olenek"). Plaintiff also had duties as a sales representative. CIT had two RVP positions of its own, filled by Dan Cruzen ("Cruzen") and Robert Hall ("Hall"). They reported directly to Charles Graves ("Graves"), the Managing Director of CIT Systems Leasing.

In preparation for the acquisition, Graves restructured CIT's sales force. He decided to add another RVP position and create a Senior Vice President ("SVP") position. The SVP was required to be based in Michigan and would report directly to Graves. The RVPs would report to the SVP. Additionally, the acquisition produced several sales representative positions at CIT, to be filled mostly by GTS employees.

In March 2004, Graves began to fill the vacancies. He offered the SVP position to Cruzen, who declined because he did not want to relocate to Michigan. Next, Graves offered the position to John Abella ("Abella"), a top performing sales representative. Abella also turned the position down because, he too, did not want to relocate. However, Graves countered by offering him the new RVP position. Abella accepted the position no later than April 2004, according to CIT. However, the SVP position remained open.

On June 30, 2004, a meeting was held at the GTS headquarters in Florida. Graves met with several key employees from GTS as a group, and then met individually with Plaintiff, Liebsch and Olenek. Graves met with the Plaintiff first. Nancy Stermer ("Stermer"), CIT's Vice President of Corporate Communications and Marketing was also present. They discussed the performance of the sales representatives in Plaintiff's territory. Later, the discussion turned to employment opportunities with CIT for the Plaintiff.

2

The Plaintiff claims that following the discussion of her salespeople, she asked Graves if he wanted to know anything about her and he said no.  She claims Graves explained that there was no position for her because the SVP position was already offered to someone who was willing to relocate to Michigan.  Additionally, the Plaintiff claims Graves would not allow her to explain her current hybrid position, as both a manager and a sales representative, with GTS.

CIT claims the Plaintiff was informed about the SVP job but she indicated she was not willing to relocate to Michigan, and she questioned the necessity of that requirement.  Graves testified during deposition that he told the Plaintiff there were no RVP positions, because Abella had accepted the newly created third position.  Also, Graves says he suggested that the Plaintiff apply for a sales representative position but Plaintiff replied that she was not interested and preferred to pursue a job in management.

After meeting with the Plaintiff, Graves met with Olenek and Liebsch.  Olenek was told of the SVP position.  He was not interested because he did not want to move to Michigan.  Liebsch was also told of the SVP position and was interested, but had to consult with his wife about relocating.  According to CIT, Liebsch was an excellent candidate because of his level of interest in the job, independent follow up, and an excellent referral from his supervisor.  Liebsch was later given the SVP position.

A few days after the June 30, 2004 meeting, the Plaintiff and Graves had a telephone conversation.  The Plaintiff claims Graves told her she could "throw her hat into the ring" for the SVP job, but that the position was filled.  She also contends she asked about a sales representative position and Graves said he had "never seen it work

3

where a manager goes back into sales." Further, the Plaintiff claims she was ordered to take her name off of a list of individuals to be interviewed in Michigan for sales representative positions with CIT. Lastly, the Plaintiff claims Graves was unreceptive to her idea to create a fourth RVP position.

Currently, CIT has 30 sales people. Twenty nine are men. The only woman was hired from GTS.

The Plaintiff's claims in this action are for: (1) gender discrimination under 42 USC §2000e-2(a)(1) and 42 USC §1981a; (2) gender discrimination under MCL §37.2101 *et seq.*; and (3) wrongful discharge. CIT denies any discrimination and argues further that the common law claim for wrongful discharge is preempted by Michigan's civil rights act.

### III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v.*

4

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

IV.   **APPLICABLE LAW AND ANALYSIS**

   A.   **Statutory Discrimination Claims**

The Plaintiff claims gender discrimination because Graves allegedly refused to consider her for the SVP and sales representative positions. The Plaintiff also disputes

whether the RVP position held by Abella was filled at the time of the June 30th meeting.

The analysis that pertains here is three-pronged.

### 1.     Prima Facie Case

In order to establish a prima facie claim of discrimination[1], Plaintiff must introduce evidence sufficient to support a finding that: (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position either lost or not gained; and (4) a person not of the protected class replaced, or was selected over her.  *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1081 (6th Cir. 1994).  Proof of these elements creates a rebuttable presumption that the employer unlawfully discriminated against the employee.  *Id.*

### a.     SVP Position

The Plaintiff failed to establish a prima facie case of gender discrimination regarding the SVP position.  While she is a member of a protected class, alleges an adverse employment action in that she was not hired or considered for the position, and Liebsch, a man, was selected for the SVP position - Plaintiff has not established that she was qualified for the position.

Plaintiff does not challenge that relocation to Michigan was a qualification for the SVP position.  Instead, she argues that she never refused to relocate, as CIT claims.

Where the position at issue requires relocation, the plaintiff must provide evidence that she was willing to relocate in order to establish qualification for purposes

---

[1] The analysis is the same for Plaintiff's statutory federal and state law discrimination claims because both courts use the test adapted from *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  *See Lytle v. Malady*, 458 Mich. 153, 173 n.19 (1998).

of a prima facie case of employment discrimination. *Hildebrandt v. Hyatt Corporation*, 154 Fed.Appx. 484, 487 (6th Cir. 2005). In *Hildebrandt*, the plaintiff alleged age and gender discrimination for a failure to promote. She claimed she was discriminated against when she was passed over for the director of sales of Hyatt's Central National Office. The position required relocation to Chicago. The plaintiff resided in Cincinnati. The plaintiff disputed whether the promotion required relocation and that she was unwilling to relocate.

The court found that the plaintiff failed to come forward with evidence regarding her willingness to relocate. "Absent evidence that [the promotion] did not require relocation...or that [the plaintiff] was willing to relocate...a reasonable trier of fact could not find in her favor on this issue, and the district court properly granted summary judgment." *Hildebrandt*, 154 Fed.Appx. at 487.

In this case, while Plaintiff disputes whether she told anyone at CIT that she would not relocate, she does not offer any evidence - or even allege - that she *was willing* to relocate to Michigan for the SVP position. In her response to CIT's motion for summary judgment she addresses her prima facie case in a footnote and states that she "was qualified by experience" for the SVP, RVP and sales representative positions. [Plaintiff's Response, p. 9 n.51]. However, she does not allege that she was in fact willing to move to Michigan. Further, in her deposition Plaintiff denies saying she would not relocate and says that when she was told of the relocation requirement she described what happened at another company when she was asked to move and discussed timing and consideration of a move. [Meson Deposition, p. 36]. She later clarified her deposition testimony with a declaration. Plaintiff claims that during the

7

telephone conversation following the June 30th meeting, Graves said to her that she was not willing to relocate, she said she did not agree with the statement but did tell him that another employer initially required her to move but she later decided she was better where she was and did not relocate. [Meson Declaration, p. 4]. Plaintiff does not allege that she told Graves she was willing to move to Michigan or that she verbally disagreed with his statement that she was unwilling to relocate.

Because the Plaintiff failed to introduce evidence or even allege that she was willing to move to Michigan, she failed to establish a prima facie case of gender discrimination regarding the SVP position. Summary judgment is proper.

### b.  RVP Position

Plaintiff also failed to establish a prima facie case of discrimination regarding the RVP position filled by Abella. While the Plaintiff alleges she is a member of a protected class, was qualified for the position, and that the position was filled by a man - she did not establish that she suffered an adverse employment action.

While the Plaintiff hints that the RVP position was not filled at the time of her June 30th meeting with Graves, she does not provide any evidence to that effect. Therefore, summary judgment is proper.

### c.  Sales Representative Position

Plaintiff established a prima facie case of gender discrimination regarding a sales representative position. She is a member of a protected class. Sufficient evidence is presented that she suffered an adverse employment action in that she was not hired or considered for a sales representative position. There is no dispute that she was qualified for the position. There is no dispute that several men were hired to fill sales

representative positions.

### 2.     Defendant's Burden

"Once the plaintiff has made a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 1082.   The employer's credibility is not assessed at this stage, only its ability to establish a nondiscriminatory reason.  *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166-1167 (6th Cir. 1996).  CIT has the burden of articulating a nondiscriminatory reason it did not hire Plaintiff as a sales representative.

CIT states a nondiscriminatory reason for its decision to not hire Plaintiff.  While CIT admits Graves had the gender-neutral belief that sales managers should not be placed back into strictly sales positions, Graves allegedly still invited her to apply and she refused. [Defendants' brief, pp. 15-17].

CIT's proffered reason is legitimate and nondiscriminatory.  CIT claims she was offered a position as a sales representative, even in light of Graves belief that managers do not do well when placed into strictly sales positions.  CIT supports its nondiscriminatory reason with Graves' testimony that he offered the Plaintiff a sales representative position. [Graves Deposition, p. 26].  There was no testimony from Graves on the Plaintiff's response to that offer.  Stermer, who sat in on the meeting, testified that the Plaintiff said no to the sales representative position. [Stermer Deposition, pp. 10-11].

### 3.     Shift to Plaintiff to Establish Pretext

If the employer establishes a legitimate nondiscriminatory reason for the

employment decision, the presumption raised by the prima facie case is rebutted. *Thurman*, 90 F.3d at 1166. "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of [gender]." *Id.* (citation omitted)(emphasis original).

"To make a submissible case on the credibility of [an] employer's explanation, the plaintiff is required to show by a preponderance of the evidence either: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employment decision], or (3) that they were insufficient to motivate [the employment decision]. *Peters v. Lincoln Electric Company*, 285 F.3d 456, XXX (6th Cir. 2002). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Thurman*, 90 F.3d at 1167.

It is not the function of a judge to weigh evidence, make credibility determinations, or make inferences from facts when ruling on summary judgment; the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in her favor. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

There is a genuine issue of material fact on whether the Plaintiff was offered a sales representative position. Graves testified he told the Plaintiff she could apply for a sales position. [Graves Deposition, p. 26]. However, Plaintiff claims Graves refused to interview her. The Plaintiff's assistant, Crystal DeAngelis ("DeAngelis"), corroborated the Plaintiff's testimony in her deposition. DeAngelis claims she prepared the list of

people who were to be interviewed in Michigan.  She says the Plaintiff was on the list. [DeAngelis Deposition, p. 8].  Plaintiff also answered interrogatories, wherein she asserts Graves told her to remove herself from the list of interviewees.  Also, DeAngelis claims there was an email from CIT's human resource department telling the Plaintiff not to come for interviews because she was not going to be offered a position with CIT. *Id.* at 9.  Graves was allegedly sent a copy of the email.  Graves was not asked about the alleged email during deposition.  Accepting the Plaintiff's allegations as true, summary judgment is inappropriate on this claim.

### B. Wrongful Discharge

The Plaintiff alleges CIT is liable for wrongful discharge based on gender discrimination under Michigan law, apart from her claims under the Elliott-Larsen Civil Rights Act ("ELCRA").[2]  The Plaintiff relies on *Pompey v. General Motors Corporation*, 385 Mich. 537 (1971).  CIT claims there is no longer a cause of action under *Pompey* since the enactment of the ELCRA.  Assuming *arguendo* Plaintiff could prove she was discharged from CIT, the Court finds ELCRA is the exclusive remedy for gender discrimination in employment under Michigan law.  Therefore, summary judgment is appropriate on this claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for summary judgment.  Trial will proceed on the sales

---

[2]MCL §37.2101 *et seq*.

representative position only.

**IT IS SO ORDERED.**

                                                    s/Victoria A. Roberts  
                                                   Victoria A. Roberts  
                                                   United States District Judge

Dated: February 17, 2006

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 17, 2006.

s/Linda Vertriest  
Deputy Clerk

---